Lahtinen, J.
(dissenting). Respectfully, we dissent and would grant the petition. Nearly nine years ago, escalating health care costs ostensibly resulted in petitioner notifying its employees that it was planning to cut a non-contractual benefit that at that time cost the school over $100,000 per year. Respondent Chenango Forks Teachers Association, NYSUT, AFT, AFL-CIO, Local 2561 (hereinafter the Association) filed a grievance under the 2001-2004 collective bargaining agreement (hereinafter CBA) in July 2003. Some months later, in September 2003, the Association filed an improper practice charge with respondent Public Employment Relations Board (hereinafter PERB). PERB made a pre-arbitral deferment to the pending arbitration and hence conditionally dismissed the charge subject to a motion to reopen.
In November 2004, the arbitrator determined that petitioner had not violated the CBA since there was no requirement therein for such a payment. The arbitrator’s decision reflects that the Association had argued and relied upon past practice evidence regarding Medicare Part B reimbursements at the *1486 arbitration and, noting that evidence, the arbitrator held that “such practices originated from the former Empire Plan and a now repealed statutory obligation on the part of [petitioner], and once the statutory obligation was removed, [petitioner] made voluntary Medicare Part B reimbursement payments to retirees. The voluntariness of [petitioner’s] conduct, given the origin of [petitioner’s] Medicare Part B reimbursements, does not contain sufficient evidence of a mutual understanding and agreement to establish a binding past practice.” Unhappy with the result and seeking to relitigate the issue of past practice, the Association moved to reopen the improper practice charge. PERB granted the application and, well over five years after the arbitrator’s decision, PERB rendered a determination in April 2010 in favor of the Association and directed petitioner to rescind its June 2003 announcement.
Strong public policy supports permitting willing parties to frame their issues and resolve their disputes through arbitration, which almost always expedites the matter and conserves resources (see Stark v Molod Spitz DeSantis & Stark, P.C., 9 NY3d 59, 66 [2007]). Once parties have charted that course, with its benefits and concomitant risks, “ ‘[i]t has long been the policy of the law to interfere as little as possible’ ” (Westinghouse Elec. Corp. v New York City Tr. Auth., 82 NY2d 47, 54 [1993], quoting Matter of Siegel [Lewis], 40 NY2d 687, 689 [1976]). The issue of past practices may be considered by arbitrators (see Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva, 92 NY2d 326, 332 [1998]), and “ ‘[arbitrators may do justice’ and ‘are not bound by principles of substantive law or rules of evidence’ ” (id., quoting Lentine v Fundaro, 29 NY2d 382, 386, 385 [1972]).
Consistent with these general arbitration policies, it has long been the policy, both of PERB and in national labor relations matters, to accord post-arbitral deference to an arbitrator’s decision so long as the disputed issue was presented and considered by the arbitrator, the arbitration proceeding was fair, and the arbitrator’s decision was not clearly repugnant to the purposes and policies of PERB (see e.g. Matter of New York City Tr. Auth. [Transport Workers’ Union of Am,.], 4 PERB 11 3031, 1971 WL 252455; Hammontree v National Labor Relations Bd., 925 F2d 1486, 1491 [1991]; see generally 48 Am Jur 2d, Labor and Labor Relations § 646). Here, the Association sought arbitration, it urged past practice as supporting its position in the arbitration,[5]
[6] there is no allegation that it did not have a full opportunity to *1487 advocate its position in the arbitration, and the arbitrator’s decision was not clearly repugnant to PERB’s purpose. The arbitrator addressed in a relatively prompt fashion the issues that had significant financial ramifications for all parties, as well as for taxpayers in the school district. Under these circumstances, PERB abused its discretion in disregarding its established post-arbitral deference policies.[6] Such arbitrary disregard resulted in a procedure that was unduly protracted, and a determination that is not free of constitutional concern (see NY Const, art VIII, § 1; cf. Matter of Karp v North Country Community Coll., 258 AD2d 775, 775-776 [1999] [payments not expressly authorized by statute, resolution or contract are unconstitutional public gifts, and prior practice alone does not permit circumvention of the constitution]; but see Matter of Baker v Board of Educ., 29 AD3d 574, 575 [2006], lv denied 7 NY3d 708 [2006]).
Rose, J., concurs. Adjudged that the determination is confirmed, without costs, and petition dismissed.

. The Association should not benefit from a contention that, by addressing past practices, the arbitrator exceeded the issues before him when, as *1487 stated in the arbitrator’s decision, it was the Association that presented that issue at the arbitration.

. The petition, which seeks to set aside PERB’s determination as, among other things, arbitrary, includes among its many allegations the arbitrator’s ruling on past practices. Petitioner’s brief, referring to the issue at one point as collateral estoppel (cf. National Labor Relations Bd. v Roswil, Inc., 55 F3d 382, 386 [8th Cir 1995] [noting interrelated questions including deference and collateral estoppel]), asserts the arbitrator’s ruling on past practices as a ground to grant the petition.